**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE SEAMAN, | ) | CASE NO.  4:11-cv-988 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Michelle Seaman ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying her application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

## I.    PROCEDURAL HISTORY

On January 8, 2008, Plaintiff protectively filed an application for a POD and DIB and alleged a disability onset date of August 9, 2007.  (Tr. 10.)  The application was

denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 10.)  On January 6, 2010, an ALJ held Plaintiff's hearing.  (Tr. 10.)  Plaintiff appeared, was represented by an attorney, and testified. (Tr. 10.)  A vocational expert ("VE") also appeared and testified.  (Tr. 10.)  On January 28, 2010, the ALJ found Plaintiff not disabled.  (Tr. 18.)  On March 25, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)  On May 17, 2011, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)

On December 2, 2011, Plaintiff filed her Brief on the Merits.  (Doc. No. 19.)  On January 11, 2012, the Commissioner filed his Brief on the Merits.  (Doc. No. 20.) Plaintiff did not file a Reply Brief.

Plaintiff asserts two assignments of error:  (1) the ALJ failed to assess Plaintiff's credibility properly; and (2) the ALJ failed to assess the opinions of Plaintiff's treating physician, Dr. Weiss, properly.

## II.  EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was 37 years old on her alleged disability onset date and 39 years old at the time of her hearing before the ALJ.  (Tr. 12, 17.)  She has at least a high school education and is able to communicate in English.  (Tr. 17.)  She has past relevant work experience as a bakery worker, cashier, daycare worker, restaurant manager, grocery store receiver, retail store floor person, retail sales shift supervisor, and shipper for a catalogue company.  (Tr. 17.)

2

### B.    Medical Evidence

On August 9, 2007, Plaintiff was admitted to the hospital for complaints of chest pain.  (Tr. 237.)  The next day, Plaintiff was diagnosed with triple vessel coronary artery disease and severe cardiomyopathy.  (Tr. 239-40.)  Additionally, Plaintiff was diagnosed with uncontrolled diabetes.  (Tr. 230.)  On August 14, 2007, Plaintiff underwent open-heart triple bypass surgery.  (Tr. 244.)  Plaintiff tolerated the procedure well and suffered no complications.  (Tr. 245.)

On September 19, 2007, Plaintiff presented to Dr. Suresh Reddy, M.D., for a comprehensive medical examination.  (Tr. 291.)  Dr. Reddy reported that Plaintiff denied having any cough, dyspnea, wheezing, chest pain with exertion or at rest, palpitations, syncope, edema, joint swelling, crepitus, loss of range of motion, back pain, headaches, weakness, numbness, or tingling.  (Tr. 293.)  Dr. Reddy's physical evaluation of Plaintiff essentially was unremarkable; Dr. Reddy found that Plaintiff was neurologically intact with symmetrical reflexes and a normal gait.  (Tr. 293.)

On November 13, 2007, Plaintiff presented to Dr. Reddy to follow up on her medication and to obtain a "flu shot."  (Tr. 289.)  Dr. Reddy indicated that Plaintiff reported she had been exercising and felt "well."  (Tr. 289.)  Dr. Reddy reported upon physical examination that Plaintiff's lungs were clear with no wheezing or ronchi; and Plaintiff's heart rhythm and rate were within normal limits with no abnormal clinical heart sounds.  (Tr. 289.)

On March 20, 2008, Plaintiff presented to Dr. Lisa Weiss, M.D., to establish a new primary care relationship—particularly for management of Plaintiff's diabetes and hypertension.  (Tr. 319.)  Dr. Weiss indicated that Plaintiff reported she had stopped

3

working at her prior job because of her heart surgery, but that she was presently seeking employment.  (*See* Tr. 320.)  Dr. Weiss reported that Plaintiff denied fatigue, weakness, malaise, chest pains, palpitations, syncope, dyspnea on exertion, peripheral edema, cough, dyspnea at rest, wheezing, joint pain, swelling, stiffness, or leg pain with exertion.  (Tr. 320.)  Dr. Weiss observed that Plaintiff exhibited a normal gait; and Dr. Weiss's physical examination of Plaintiff essentially was normal.  (Tr. 321.)

On October 16, 2008, state agency physician William Bolz, M.D., reviewed Plaintiff's medical records and assessed Plaintiff's physical residual functional capacity ("RFC") as follows.  (Tr. 339-46.)  Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk for 6 hours in an 8-hour day with normal breaks.  (Tr. 340.)  Her abilities to push and pull were unlimited except to the extent that she was limited in her abilities to lift and carry.  (Tr. 340.)  She occasionally could climb ladders, ropes, and scaffolds.  (Tr. 341.)  She did not have manipulative, visual, communicative, or environmental limitations.  (Tr. 342-43.)

Dr. Bolz observed that Plaintiff alleged:  she was disabled because of diabetes and heart problems; her lifting and sitting were limited; she had problems sitting and standing for long periods of time; she lacked energy; and, at reconsideration of her claim for disability, her diabetes had become worse and she was more tired than before.  (Tr. 344.)  However, Dr. Bolz found Plaintiff only partially credible because the medical evidence showed that Plaintiff did not have problems breathing and did not suffer complications regarding her heart; had a normal gait and no ataxia; and had a foot examination that was within normal limits.  (Tr. 344.)

On November 8, 2008, Plaintiff presented to the hospital emergency room with a

4

complaint of chest discomfort after her father suddenly passed away.  (*See* Tr. 435.)

The next day, Dr. Walter C. Sweeney, D.O., performed a consultative examination of

Plaintiff's chest discomfort and positive cardiac enzymes.  (Tr. 435.)  Dr. Sweeney

reported the following.  Plaintiff suffered multiple conditions including a history of

coronary artery disease, obesity, diabetes mellitus, and hypertension.  (Tr. 437.)  She

felt "markedly improved" after she was intravenously given nitroglycerin and heparin.

(Tr. 435.)  She denied exertional chest, neck, arm, or jaw discomfort; and her breathing

and heart rate and rhythm essentially were normal.  (Tr. 436.)  Dr. Sweeney performed

a left heart catheterization and percutaneous coronary intervention with balloon

angioplasty; and on November 13, 2008, Plaintiff was discharged from the hospital in

good condition.  (Tr. 432, 447.)

On December 19, 2008, Plaintiff presented to Dr. Sweeney for a follow-up.  (Tr.

429.)  Dr. Sweeney indicated that Plaintiff reported the following.  Plaintiff was

participating in cardiac rehabilitation where she exercised on a treadmill, stationary

bicycle, and arm cycle.  (Tr. 429.)  She also was taking care of her brother.  (Tr. 429.)

In performing all of these activities, she did not suffer any chest discomfort or dyspnea

upon exertion.  (Tr. 429.)  She also did not suffer any orthopnea, paroxysmal nocturnal

dyspnea, or lower extremity edema.  (Tr. 429.)  Upon physical examination, Dr.

Sweeney observed that Plaintiff's lungs and heart rate and rhythm essentially were

normal; and that Plaintiff had full range of motion and no edema in her extremities.  (Tr.

429.)  Dr. Sweeney noted that Plaintiff did not have signs or symptoms of recurring

ischemia; and that Plaintiff's hypertension was currently well controlled.  (Tr. 430.)

On March 3, 2009, Plaintiff presented to Dr. Weiss for a routine follow-

up—particularly regarding management of Plaintiff's diabetes, hypertension, and lipids. (Tr. 372.)  Dr. Weiss indicated that Plaintiff reported the following.  Plaintiff was not enrolled in the "Diabetic Education Program," but she understood the dietary principles for diabetics and followed her diet accordingly.  (Tr. 372.)  She checked her blood sugars at home, but she did not exercise regularly.  (Tr. 372.)  She complained of hypoglycemic symptoms such as weakness; but she suffered such symptoms only seldomly and presently did not suffer them.  (Tr. 372.)  She also felt tired when her blood sugar was high.  (Tr. 372.)  Dr. Weiss observed that Plaintiff did not have symptoms that suggested diabetic complications.  (Tr. 372.)  Upon physical examination, Dr. Weiss reported that Plaintiff's breathing and heart rate and rhythm essentially were normal; and that Plaintiff exhibited a normal gait with no ataxia.  (Tr. 374.)  Dr. Weiss diagnosed Plaintiff with Type II, uncontrolled diabetes mellitus with complications not otherwise specified.  (Tr. 375.)

On July 7, 2009, Plaintiff presented to Dr. Weiss for continued treatment of her diabetes, hypertension, and lipids.  (Tr. 367.)  Plaintiff also complained of numbness in her hands and arms that occurred at night.  (Tr. 367.)  Dr. Weiss indicated that Plaintiff reported peripheral edema.  (Tr. 367.)  Upon physical examination, Dr. Weiss reported that Plaintiff's breathing and heart rate and rhythm were normal; and that an examination of Plaintiff's feet in relation to diabetes management was normal.  (Tr. 369.)  Dr. Weiss concluded that there were no symptoms to suggest diabetic complications.  (Tr. 367.)  Nevertheless, Dr. Weiss diagnosed Plaintiff with Type II, uncontrolled diabetes mellitus with complications not otherwise specified; but Dr. Weiss noted that Plaintiff's diabetes was "[n]ow more controlled."  (Tr. 370.)

6

On August 4, 2009, Plaintiff presented to Dr. Weiss with complaints of swollen feet and a rash on her feet.  (Tr. 363.)  Dr. Weiss indicated that Plaintiff reported the swelling in her feet began a week prior, and that she suffered dyspnea with exertion. (Tr. 363.)  Dr. Weiss reported upon physical examination that Plaintiff's breathing and heart rate and rhythm were normal, but that Plaintiff had a rash on the top of her feet. (Tr. 365.)  Dr. Weiss diagnosed Plaintiff with peripheral edema and gave Plaintiff an ace wrap to help with the swelling.  (Tr. 365.)

On August 10, 2009, an echocardiogram revealed mild tricuspid insufficiency with borderline high pulmonary artery pressure.  (Tr. 354.)

On September 11, 2009, Dr. Weiss authored a note indicating that Plaintiff was the sole care-giver for her stepmother and brother; and that Plaintiff also was medically dependent on medication.  (Tr. 347.)

On October 29, 2009, Plaintiff presented to Dr. Weiss with complaints that included "severe" pain and swelling in her left ankle.  (Tr. 351.)  Dr. Weiss indicated that Plaintiff continued to complain of dyspnea with exertion and peripheral edema.  (Tr. 351-52.)  Dr. Weiss reported upon physical examination that Plaintiff's breathing and heart rate and rhythm were normal, and that Plaintiff's gait was normal with no ataxia; but that Plaintiff had pain with movement in her lower left extremity.  (Tr. 353.)

On December 5, 2009, Dr. Weiss authored a Medical Source Statement regarding Plaintiff's physical capacity and indicated the following.  (Tr. 348-49.)  Plaintiff suffered moderate pain; and she had not been prescribed any assistive ambulatory devices.  (Tr. 349.)  Plaintiff could lift 10 pounds occasionally; stand and walk for a total of 2 hours; rarely or never climb, balance, stoop, crouch, kneel, or crawl; and

7

occasionally reach, handle, feel, push, pull, and perform fine and gross manipulation. (Tr. 348-49.)  Plaintiff's impairments affected her ability to tolerate heights, moving machinery, temperature extremes, chemicals, dust, and fumes.  (Tr. 349.)  Plaintiff would require rest breaks throughout a workday in addition to normal morning, lunch, and afternoon breaks scheduled at approximately 2-hour intervals; and she would require an at-will sit/stand option.  (Tr. 349.)  Dr. Weiss further explained that Plaintiff "cannot have feet dangling or standing for long periods of time [because] feet swell." (Tr. 349.)

### C.  Hearing Testimony

#### 1.  Plaintiff's Testimony

Plaintiff testified at her hearing as follows.  Plaintiff lived with her stepmother. (Tr. 27.)  Her brother lived across the street.  (Tr. 28.)  Plaintiff helped care for her brother and performed dialysis for him.  (Tr. 28.)

Plaintiff was not able to work because of back pain, swelling and numbness in her legs, difficulty bending; and pain upon prolonged sitting, standing, and bending. (Tr. 31.)  She first complained about her back pain to a doctor a few months before her hearing.  (Tr. 33.)  She was not diagnosed with any particular impairment to which her back pain could be attributed, and she took only Advil to alleviate her pain.  (Tr. 33.)

Plaintiff noticed swelling in her feet approximately six months before her hearing. (Tr. 35.)  Her doctor gave her Lasix and potassium to reduce the swelling, but the swelling did not resolve completely and recurred every few days.  (Tr. 35-36.)  Standing made the swelling worse.  (Tr. 40.)

8

Plaintiff had difficulty breathing on occasion, and some days were better than others—although her last heart surgery generally resulted in an ability to better maintain her breath.  (Tr. 33, 37.)  When she walked across the street to her brother's house and up the three steps on her brother's porch, she sometimes needed to rest because she became short of breath.  (Tr. 42.)

Plaintiff experienced pain and numbness in her hands and arms, which she reported to her doctor approximately six months before her hearing; however, her doctor had not yet opined about, or treated Plaintiff for, those symptoms.  (Tr. 39.)  Plaintiff could button her clothes, use zippers, and turn doorknobs, but sometimes with difficulty.  (Tr. 43.)

Plaintiff also had diabetes.  (Tr. 36.)  Although Plaintiff's doctor indicated that Plaintiff suffered complications with her diabetes, Plaintiff was not aware of any such complications and did not believe she suffer limitations related to her diabetes.  (Tr. 36.)  Indeed, Plaintiff took her medication for her diabetes, and her blood sugars "have been pretty okay."  (Tr. 37.)

Plaintiff explained her daily routine as follows:

> On a typical day, I get up, I take my medications and all of that, and then I go get my brother off the dialysis machine because he's on a machine overnight.  And then I wait until about noon and I do a manual exchange on him, because he has to have another manual exchange during the day of the fluids I put into his belly, and then they set until he goes to bed at night, and then just put on the machine.  And then  . . . if he needs food cooked for him for the day, I'll go down and cook food for him.

(Tr. 37.)  She also cut her brother's lawn in the summer, although it was very difficult for her to do so.  (Tr. 38.)  She had a driver's license and drove two to three times a week.  (Tr. 28-29.)  She went grocery shopping, although she brought her stepmother to help

9

her; she dined at restaurants with her stepmother, although not often because her

stepmother suffered anxiety in public places; she visited her aunt, who lived nearby;

and she occasionally visited her friends.  (Tr. 38-39.)

### 2.    The VE's Testimony

The ALJ posed the following hypothetical to the VE:

> [P]lease assume an individual of the claimant's age, education, and work
> experience, and that such a person could lift and carry 10 pounds
> occasionally.  She can stand or walk for two hours of an eight-hour workday.
> She can sit for six hours of an eight-hour workday.  She requires a sit/stand
> option every 30 minutes.  She can never climb ladders, ropes, or scaffolds.
> She can occasionally climb ramps and stairs. She can occasionally balance,
> stoop, crouch, kneel, or crawl. She can occasionally handle, feel, push, or
> pull.  Perform fine and gross manipulation.  She must avoid all exposure to
> heights and moving machinery, and she must avoid concentrated exposure
> to temperature extremes, chemicals, dust, and fumes.

(Tr. 45-46.)  The VE testified that such a person could not perform Plaintiff's past

relevant work, but could perform other work as a surveillance-system monitor (for which

there were approximately 115,000 positions in the national economy), document

preparer (for which there were approximately 124,000 positions in the national

economy), and telephone service provider for various industries not including

telemarketing (for which there were approximately 72,000 positions in the national

economy).  (Tr. 46.)

The ALJ asked the VE how his testimony would be affected if the hypothetical

person were off task for between 10 and 15 percent of the workday, and the VE

responded that such a person would not be able to perform other work.  (Tr. 47.)

Plaintiff's attorney thereafter posed the following hypothetical to the VE:

> I'm going to give you a hypothetical based on the RFC by the treating
> physician, Dr. Weiss . . . .  And it's really only going to differ from [the]

10

> hypothetical that your honor has given by limiting standing and walking to two hours in an eight-hour day; rarely to never climb, balance, stoop, crouch, kneel, or crawl; and only occasional reach, handle, feel, push, pull, and use fine and gross manipulation.  As well as needing an additional break besides a morning break, a lunch break, and an afternoon break . . . .  [And t]here would be no sitting restriction.

(Tr. 47.)  The VE testified that the postural limitations would not affect the hypothetical person's ability to perform the work to which he testified, but that the limitation of requiring more breaks throughout the workday than normal morning, lunch, and afternoon breaks would preclude such a person from performing any work in the national economy.  (Tr. 48.)

The VE testified that his testimony was consistent with the Dictionary of Occupational Titles.  (Tr. 47.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981)*.  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott*

11

*v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate

that she is not currently engaged in "substantial gainful activity" at the time she seeks

disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant

must show that she suffers from a "severe impairment" in order to warrant a finding of

disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that

"significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905

F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a

severe impairment that is expected to last for at least twelve months, and the

impairment meets a listed impairment, the claimant is presumed to be disabled

regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and*

416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her

past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*

416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does

prevent her from doing her past relevant work, if other work exists in the national

economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§

404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 30, 2010.

2. The claimant has not engaged in substantial gainful activity since August 9, 2007, the alleged onset date.

3. The claimant has the following severe impairments:  coronary artery disease (status post coronary artery by-pass grafting and status post

myocardial infarction), congestive heart failure, peripheral edema, hypertension, insulin dependent diabetes mellitus, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the Listed Impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work . . . except she: is not capable of standing/walking for more than 2 cumulative hours in an eight-hour workday; is limited to 6 hours of cumulative sitting in an eight-hour workday; requires a sit or stand option every 30 minutes; must never climb ladders, ropes, or scaffolds, but can *occasionally* climb ramps and stairs, balance, stoop, crouch, kneel and crawl; is limited to *occasional* handling, feeling, pushing, pulling, and fine and gross manipulation; must avoid all exposure to heights and moving machinery; must avoid concentrated exposure [to] temperature extremes, chemicals, dust, and fumes.

6. The claimant is unable to perform any past relevant work.

. . . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2007 through the date of this decision.

(Tr. 10-18) (footnote omitted).

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ erred by failing to "evaluate" six of the seven factors delineated in Social Security Ruling 96-7p, and by failing to "elucidate" the reasons he gave for his credibility determination.  For the following reasons, although Plaintiff's contention that the ALJ failed to evaluate the factors under Social Security Ruling 96-7p

14

is not well taken, the Court agrees with Plaintiff that the ALJ's reasons for his determination of Plaintiff's credibility are not sufficiently clear.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983).  Sometimes, an individual's symptoms can suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone; accordingly, the ALJ must consider, in addition to the objective medical evidence, the following:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

S.S.R. 96-7p, 1996 WL 374186, at *3 (S.S.A.) (citing 20 C.F.R. 404.1529(c) and

15

416.929(c)).  The ALJ also must provide an adequate explanation for his credibility determination:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.   The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

Here, the ALJ stated he considered all of the evidence—including the subjective factors in this case pursuant to Social Security Ruling 96-7p—and concluded that, although Plaintiff's impairments could reasonably be expected to cause Plaintiff's alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC determination because they were belied by Plaintiff's activities of daily living.  (Tr. 14-16.)  Specifically, the ALJ explained that the evidence showed Plaintiff was independent in terms of her activities of daily living and personal care needs; occasionally ate out and socialized with friends; and assisted various elderly and ailing family members in their day-to-day needs—including her brother, for whom she assisted with daily dialysis, cooking, and other needs.  (Tr. 15.)

Although Plaintiff contends that the ALJ was required to "evaluate" not just her activities of daily living, but all the other factors listed in Social Security Ruling 96-7p,

16

Plaintiff does not cite any legal authority in support of this contention.  Indeed, the plain language of the Ruling provides that the ALJ must consider, not "evaluate," the various factors when assessing a claimant's credibility.  It is well settled that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (per curiam) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).  Not only did the ALJ state that he considered the factors described in Social Security Ruling 96-7p, but a review of the ALJ's opinion supports the conclusion that he did so.  (*See* Tr. 14-16.)  Accordingly, Plaintiff's contention that the ALJ erroneously failed to "evaluate" the other factors in the Ruling is not well taken.

However, the Court agrees that the ALJ's reasons for finding Plaintiff's subjective statements less than fully credible are not sufficiently clear.  There is no apparent connection between (a) Plaintiff's abilities to care for herself, occasionally socialize with her friends, and cook and care for her family members, and (b) the ability to work on a sustained and continuous basis.  For example, Plaintiff's daily activities do not necessarily require her to perform them without numerous unscheduled breaks and changes in her postural position.  Indeed, Plaintiff testified that she often needed to rest between walking across the street to her brother's house and thereafter assisting her brother with dialysis.  The ALJ does not explain how Plaintiff's activities of daily living support the conclusion that Plaintiff is not as limited as she claims.  Absent an explanation from the ALJ of the logical nexus between Plaintiff's activities of daily living and the conclusion that Plaintiff is not as limited as she claims, the Court is unable to perform a meaningful review of the Commissioner's final decision.  Accordingly, remand

is necessary for the ALJ to give a sufficiently specific, clear, and adequate explanation of his assessment of Plaintiff's credibility.

### C.    The ALJ's Assessment of Dr. Weiss's Opinions

Plaintiff argues that, although the ALJ gave the opinions of Plaintiff's treating physician, Dr. Weiss, "significant weight," the ALJ ignored Dr. Weiss's opinions that Plaintiff required an at-will sit/stand option and breaks throughout the workday in addition to normal morning, lunch, and afternoon breaks.[1]  Plaintiff continues that, to the extent the ALJ gave these opinions little weight, the ALJ erroneously failed to give good reasons for giving those opinions little weight.  Plaintiff concludes that the ALJ's failure to explain the weight given to Dr. Weiss's opinion that Plaintiff needed additional breaks throughout the workday was prejudicial because the VE testified that such a restriction would preclude a person such as Plaintiff from performing any work in the national economy.  For the following reasons, the Court agrees that the ALJ failed to address Dr. Weiss's opinions adequately.

An ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  Conversely, a treating source's opinion may

---

[1] Plaintiff also contends that the ALJ ignored her testimony that her legs swelled, and Dr. Weiss's opinion that Plaintiff could not tolerate postural positions in which her feet would dangle for long periods of time because of swelling. There is no basis to conclude that the ALJ ignored this evidence, as the ALJ limited Plaintiff to sedentary work with a sit/stand option every 30 minutes.

be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.  *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).

Here, the ALJ assessed Dr. Weiss's opinions as follows:

> Significant weight has been afforded to Dr. Weiss' medical source statement. Dr. Weiss has been treating the claimant since March 2008. The undersigned's assessment of the claimant's residual functional capacity is essentially consistent with the opinions expressed by Dr. Weiss . . . . However, Dr. Weiss' limitations *none/rare* postural functioning do not correspond with the preponderance of the evidence. By and through her activities of daily living, the claimant has demonstrated a capacity to occasionally balance, stoop, crouch, kneel, and crawl. She independently cares for  herself and attends to the needs of her disabled brother. She cooks and goes shopping.  No medical source has prescribed an assistive walking device.  The claimant does not take narcotic pain medication. She has not received a medical referral for physical therapy, nor is she attending cardiac rehabilitation therapy.

(Tr. 16) (internal citation omitted).

The ALJ failed to address Dr. Weiss's opinions that Plaintiff required an at-will sit/stand option (as opposed to a sit/stand option every 30 minutes) and the need for more breaks throughout the workday than are normally permitted.[2]  To the extent the

---

[2] Plaintiff further contends that the ALJ's reason for rejecting Dr. Weiss's opinion that Plaintiff could rarely or never climb, balance, stoop, crouch, kneel, or crawl—that Plaintiff's activities of daily living belied Dr. Weiss's opinion—does not constitute a "good reason."  Even if the ALJ's reason were not a "good reason," such an error would be harmless here because the VE testified that the hypothetical person with Plaintiff's qualities and with such postural

ALJ's analysis were understood to give "significant weight" to these opinions,

substantial evidence would not support the ALJ's determination that Plaintiff could

perform a significant number of jobs in the national economy because the VE testified

that a hypothetical person with Plaintiff's qualities who needed more breaks throughout

the workday than are normally permitted would be precluded from performing any

work.[3]  To the extent the ALJ's analysis were understood to give these opinions less

than controlling weight, the ALJ failed to give good reasons for doing so; and that failure

was prejudicial to Plaintiff because the opinions bear directly on whether Plaintiff is

disabled.[4]  *See* *Wilson*, 378 F.3d at 547.  As the ALJ was silent on the weight he gave

_____

limitations still would be able to perform the other work in the national economy
to which he testified.

[3]  The Commissioner contends that Dr. Weiss's opinion that Plaintiff required
more breaks during the workday than are normally permitted was not entitled to
any particular weight or deference because that opinion amounts to an opinion
of disability.  (Def.'s Br. 10.)  The Commissioner improperly conflates evidence
and a conclusion of law.  Dr. Weiss's opinion that Plaintiff required more
breaks during the workday is not an opinion that Plaintiff is disabled; it is
opinion evidence of Plaintiff's limitations that may or may not support the
conclusion that Plaintiff is disabled.

[4]  The Commissioner contends that, although the ALJ failed to discuss the weight
he gave to Dr. Weiss's opinion regarding Plaintiff's need for additional breaks,
the ALJ "necessarily rejected it because he found Plaintiff to be capable of
working."  (Def.'s Br. 10.)  The Commissioner concludes that "[b]ecause the
ALJ's implicit rejection of Dr. Weiss's requirement of unscheduled work breaks
is supported by substantial evidence, [the Commissioner's final decision]
should be affirmed."  The mere observation that the ALJ's determination
supports the inference that the ALJ rejected Dr. Weiss's opinion, however, only
begs the question *why* he rejected the opinion; the ALJ still was required to
give good reasons.  Further, it is well settled that an ALJ's failure to give good
reasons for rejecting a treating source's opinion is not excused merely because
substantial evidence might support the ALJ's rejection of the opinion.  *See*
*Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory
procedural protection simply because, as the Commissioner urges, there is

these opinions and the reasons for that weight, the Court is not able to conduct a meaningful review of the Commissioner's final decision.  Accordingly, remand is necessary for the ALJ to provide sufficiently specific, clear, and adequate reasons for the weight he gave to Dr. Weiss's opinions regarding Plaintiff's need for an at-will sit/stand option and need to take more breaks throughout the workday than are normally permitted.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with the Memorandum Opinion and Order.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 27, 2012

---

sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").  The Court has concerns about the ALJ's failure to discuss evidence that obviously bears on whether Plaintiff is disabled.  It is well settled that "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).